### ABADIE v. CUDAHY PACKING CO. OF LOUISIANA, Ltd.

#### No. 288.

District Court, E. D. Louisiana, New Orleans Division.

March 3, 1941.

Curtis, Hall & Foster and Felix H. Lapeyre, all of New Orleans, La., for plaintiff.

Hartel & Sporl and Jonas C. Sporl, all of New Orleans, La., for defendant.

BORAH, District Judge.

This case arises under the provisions of the Fair Labor Standards Act of 1938, June 25, 1938, 52 Stat. 1060, 29 U.S.C.A. §§ 201 et seq. Plaintiff, a ledger clerk formerly in the employ of defendant, has brought this action against Cudahy Packing Company of Louisiana, Ltd., a Louisiana corporation, to recover wages for overtime, liquidated damages and reasonable attorneys' fees, under the provisions of Sections 6, 7 and 16 of the Act. The material facts are not disputed. They are as follows:

### Findings of Fact.

1. Defendant operates a plant at New Orleans, Louisiana, and is engaged in the distribution of packing house products, in the curing of meats and the manufacturing of sausage.

2. Approximately eighty per cent. of defendant's products are brought into this state from points outside of the state.

Upon delivery these goods are usually placed in warehouse or cold storage and then, in accordance with the demands of the trade, either sold in the condition in which they are received or processed and then sold; though on occasions some items to complete an order are taken directly from incoming trains or trucks and delivered immediately to defendant's customers.

3. During the period in question some of the goods sold by defendant were delivered in the State of Mississippi to small buyers who resided in the towns of Osyka, Pickens, Picayune and Tylertown. These out-of-state sales from October 24, 1938, to April 6, 1939 (the wage period involved herein), amounted to approximately $\frac{8}{10}$ of one per cent. of its total sales. The total sales price of the goods sold by the defendant during the period involved amounted to $1,050,000, whereof the merchandise shipped or delivered to Mississippi amounted to $8,000.

4. With respect to the sales and deliveries to Mississippi, the evidence shows that salesmen were sent regularly into this territory to solicit orders but that none of the products processed at defendant's plant were ever at any time delivered to such out-of-state customers.

5. In December, 1933, plaintiff entered the employ of defendant as a ledger clerk at a salary of $18 per week. For many months prior to October 24, 1938, and until April 6, 1939, when he left the employ of defendant, he was employed as a customers' ledger clerk at a weekly salary of $26.50.

6. Plaintiff's duties as a ledger clerk were to post all sales tickets and prepare monthly statements of the customers' accounts from said ledger. Plaintiff did not make up the sales tickets nor did he check same, he merely posted them to the sales ledger. His assertion that he performed other duties in addition to his duties as a ledger clerk is uncorroborated and I find on conflicting evidence that he performed no other duties.

7. The hours worked by the plaintiff during the 24-week period in question were irregular and the hours varied from 38¾ hours to 69⅙ hours.

8. If the Fair Labor Standards Act of 1938 is applicable to the situation of plaintiff, he would be entitled to receive not the amount of $488.64 claimed but an amount computed according to the method set forth

in Interpretative Bulletin No. 4 of the United States Department of Labor, Wage and Hour Division, Office of the General Counsel, revised December, 1939, paragraphs 5, 9 and 10.

### Discussion.

Sections 6 and 7 of the Act require employers to conform to the wage and hour provisions with respect to all employees engaged in interstate commerce or in the production of goods for interstate commerce. Plaintiff is not alleged to be engaged in interstate commerce and obviously he is not so engaged. He does maintain, however, that he is engaged in the production of goods for interstate commerce. And he says that this is true because by express definition in section 3(j) an employee is deemed to have been engaged "in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

The Court understands that the purpose of the Act is to prevent the shipment in interstate commerce of certain products and commodities produced in the United States under labor conditions as respects wages and hours which fail to conform to standards set up by the Act. And that Congress to attain its objective has made no distinction as to the volume or amount of shipments in the commerce or of production for commerce by any particular shipper or producer. In the recent case of United States of America v. F. W. Darby Lumber Co. and Fred W. Darby, 61 S.Ct. 451, 459, 85 L.Ed. ——, it is said:

"The recognized need of drafting a workable statute and the well known circumstances in which it was to be applied are persuasive of the conclusion, which the legislative history supports, S.Rept. No. 884 75th Cong. 1st Sess., pp. 7 and 8; H. Rept. No. 2738, 75th Cong. 3d Sess., p. 17, that the 'production for commerce' intended includes at least production of goods, which, at the time of production, the employer, according to the normal course of his business, intends or expects to move in interstate commerce although, through the exigencies of the business, all of the goods may not thereafter actually enter interstate commerce."

Having in mind the object and purpose of the Act and considering the fact that all of the goods processed at defendant's plant were sold in intrastate commerce and that the goods which it did sell extra-state were the identical products that it had theretofore acquired either locally or from other states, it is not easy to understand how it can be said with any degree of assurance that plaintiff was engaged in the production of goods for commerce when as a fact his employer was not so engaged. Even if it could be said that defendant was engaged in the production of goods for commerce because it "handled or in any other manner worked on" the goods sold in interstate commerce it would not follow that plaintiff was employed in an occupation necessary to the production thereof as there is no causal relationship between his occupation and production. Plaintiff's occupation may have been necessary in respect to defendant's business but his duties as ledger clerk were not so closely related to production as can be considered necessary thereto.

### Conclusions of Law.

1. Plaintiff was not employed in the production of goods for commerce.

2. Plaintiff's action should be dismissed and the Clerk is instructed to enter judgment accordingly.